## CARL SAWYER, Inc. v. POOR et al.
## THE MONARCH OF NASSAU.

### No. 12810.

United States Court of Appeals
Fifth Circuit.

April 5, 1950.

Lewis H. Fogle, Jr., Miami, Fla., John Raymond Fordham, Miami, Fla., for appellant.

Cody Fowler, Miami, Fla., C. L. Brown, Miami, Fla., Walter Humkey, Miami, Fla., for appellees.

Before HUTCHESON, Chief Judge, and WALLER and RUSSELL, Circuit Judges.

WALLER, Circuit Judge.

The motor vessel, Monarch of Nassau, rammed a hole in the excursion vessel,

5. Kroese v. General Steel Castings Corp., 3 Cir., 1950, 179 F.2d 760.

Fire Island, while the latter was moored to the pier in the harbor of Miami, with the result that the Fire Island became a total loss with the exception of her diesel engine, which was disposed of for $1,000. The libel sought damages in excess of $200,000. The answer admitted liability for the collision and the sole question involved was the measure of damages, for the ascertainment of which the Court appointed a commissioner who, after taking the testimony of many boatmen, marine surveyors, engineers, underwriters, and the like, fixed the damages at $30,000, against which there was deducted the sum received from the sale of the diesel engine. Interest was also allowed on the amount of the recovery from the date of the collision.

■ All agree that the usual and customary method in determining damages in cases of maritime collision is the market value of the vessel in the case of loss. See Standard Oil Co. v. Southern Pacific Co., 268 U.S. 146, 45 S.Ct. 465, 69 L.Ed. 890. But in cases where no market value has been established by recent and comparable sales other evidence is admissible touching value such as the opinion of marine surveyors, engineers, the cost of reproduction, less depreciation, the condition of repair which the vessel was in, the uses to which it can be put, the amount of insurance that the underwriters have issued, and the like. In the present case there is testimony of all of the above types and more. The opinions as to the market value ranged all the way from $10,000 to $65,000. Cost of reproduction ran from $150,000 to $200,-000. It is in evidence that there was a mortgage against the vessel for $22,000 and that she was insured after a survey for insurance in the amount of $50,000. It was shown that extensive repairs had lately been made to the vessel and that she had been certificated by the Coast Guard Inspection Service and authorized to carry 283 passengers in the waters of Boston and in the waters in and around Miami and Fort Lauderdale. There is also testimony of an offer to purchase the vessel for $60,-000, and of another offer of $100,000, subject to inspection. She had recently obtained a charter on a trial basis for one month for $6,000, with the prospect of additional chartering for a longer period.

■■ No good purpose can be served by recounting the testimony of all of the various witnesses as to their conception of market value and the factors that each used in arriving at such value. Suffice it to say that upon controverted testimony the Commissioner fixed the value well between the limits of the highest and lowest values in evidence, and that there is substantial evidence to support even a higher value than that which the Commissioner fixed. His findings and recommendations were approved in their entirety by the Court below. Although on an appeal in admiralty we have the power to find the facts *de novo*, Mosher v. Parker Brothers, 5 Cir., 178 F.2d 419, we also have a reluctance to do so because the Commissioner was in better position, after seeing and hearing the witnesses testify, to determine their credibility than we. There seems to be no justification here to disturb his findings.

■ Complaint is made against the allowing of interest from the date of the collision in view of the charge of libelee that libelant was guilty of considerable dely in bringing the case on for trial. We think that under the decisions it was within the discretion of the Court below to allow interest from the date of the collision as it was within the discretion of the Court to grant the extension of time to the appellant whereby there was a delay in the final disposition of the case. The President Madison, 9 Cir., 91 F.2d 835.

The decree of the Court below is

Affirmed.