[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12048
Non-Argument Calendar
_____

D.C. Docket No. 3:09-cv-00379-HLA-TEM

JO-ANN MARCELLE BROOKS,

Plaintiff-Appellant,

versus

CSX TRANSPORTATION, INC.,

Defendant-Appellee,

GARY GAMBLE,
in his official capacity as Manager of CSX and individually, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 7, 2014)

Before TJOFLAT, MARCUS and JORDAN, Circuit Judges.

PER CURIAM:

Jo-ann Brooks, an African-American woman over the age of 40, appeals the district court's grant of summary judgment in favor of her former employer, CSX, Transportation, Inc. ("CSX") in her employment discrimination suit under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621; Title VII, 42 U.S.C. § 2000e-2(a); and 42 U.S.C. § 1981.   In her twice-amended complaint, Brooks alleged several causes of action under each statute, including a discriminatory failure to promote, discriminatory termination, and unlawful retaliation.  On appeal, Brooks argues that: (1) the court improperly found that her failure-to-promote claims under the ADEA and Title VII were time-barred; (2) the court incorrectly found that she failed to establish a prima facie case of race discrimination under § 1981 for each promotion denial; (3) the court erred in concluding that she failed to establish a prima facie case of discrimination under the ADEA, Title VII, and § 1981 based on her termination; and (4) the court erred in concluding that she failed to demonstrate pretext with respect to her retaliation claims under ADEA, Title VII, and § 1981.  After careful review, we affirm.

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmovant.  Castleberry v. Goldome Credit Corp., 408 F.3d 773, 785 (11th Cir. 2005).   Summary judgment is appropriate if the record evidence, including depositions, declarations, and admissions, shows that there is no genuine issue as to any material fact and that the

2

movant is entitled to a judgment as a matter of law.  Fed.R.Civ.P. 56(a), (c).  If the movant meets its initial burden of demonstrating the absence of a genuine issue of material fact, then the burden shifts to the nonmovant to come forward with specific facts showing that there is a genuine issue for trial.  Castleberry, 408 F.3d at 786.  Conclusory allegations without specific supporting facts have no probative value in the summary judgment context.  Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000).  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge.  Fed.R.Civ.P. 56(c).

First, we are unpersuaded by Brooks's argument that her ADEA and Title VII failure-to-promote claims were timely.  Title VII requires that a plaintiff exhaust certain administrative remedies, which begins by filing a timely charge of discrimination with the EEOC, before filing a suit for employment discrimination.  See 42 U.S.C. §§ 2000e-5.  For a charge to be timely in a deferral state like Florida, it must be filed within 300 days of the last discriminatory act.  See E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1271 (11th Cir. 2002).  Thus, only those claims arising within 300 days prior to the filing of the EEOC's discrimination charge are actionable.  Id.

The continuing violation doctrine permits a plaintiff to sue on an otherwise time-barred claim where at least one other violation occurred within the statutory period.  Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1221 (11th Cir. 2001).

However, the doctrine does not apply to discrete acts of discrimination, such as a promotion denial or refusal to hire. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) (noting that each instance of failure to promote or refusal to hire is a discrete act of discrimination that constitutes a "separate actionable unlawful employment practice") (quotation omitted). Alternatively, a court may equitably toll a limitations period, but the burden is on the plaintiff to establish that tolling is warranted. Bost v. Fed. Express Corp., 372 F.3d 1233, 1242 (11th Cir. 2004). Equitable tolling "is an extraordinary remedy which should be extended only sparingly," and is inappropriate when a plaintiff did not file an action promptly or failed to act with due diligence. Id. (quotation omitted).

Here, all of Brooks's ADEA and Title VII failure-to-promote claims were time-barred. Because Brooks filed her EEOC charge on June 17, 2008, any discriminatory act she complained of must have occurred within 300 days, or on or after August 22, 2007, to be timely. Joe's Stone Crabs, 296 F.3d at 1271. As Brooks's admissions reveal, however, all of the promotion denials occurred before that date. While she now says she was unaware of certain promotion decisions, she did not seek to withdraw her admissions before the district court, and thus, that evidence conclusively established the matter. See Fed.R.Civ.P. 36(b) (noting that a matter admitted in response to a request pursuant to Rule 36 of the Federal Rules of Civil Procedure is "conclusively established unless the court, on motion, permits

4

the admission to be withdrawn or amended"). Further, Brooks's equitable tolling argument is unavailing because she failed to raise it before the district court, and thus, we need not consider it now. See Access Now, Inc. v. SW Airlines Co., 385 F.3d 1324, 1331-32 (11th Cir. 2004). Moreover, Brooks's failure to establish the timeliness of the latest alleged discriminatory promotion denial precluded the application of the continuing violation doctrine as to the earlier five promotion denials. Hipp, 252 F.3d at 1221.

We also disagree with Brooks's claim that she established a prima facie case of race discrimination under § 1981 for each promotion denial. Like Title VII, § 1981 prohibits discrimination on the basis of race, and we routinely group Title VII and § 1981 claims together for analytic purposes. 42 U.S.C. § 1981(a) (protecting against race discrimination only); Jimenez v. Wellstar Health Sys., 596 F.3d 1304, 1312 (11th Cir. 2010). In cases like this one, lacking direct evidence of employment discrimination, we use the McDonnell Douglas framework, in which the plaintiff must create an inference of discrimination through a prima facie case. Springer v. Convergys Customer Mgmt. Grp. Inc., 509 F.3d 1344, 1347 (11th Cir. 2007) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).

Where a plaintiff alleges intentional discrimination based on a failure to promote, the prima facie showing requires, inter alia, that the plaintiff was qualified for and applied for a position, and that despite those qualifications, she

5

was rejected.  See McCann v. Tillman, 526 F.3d 1370, 1373, 1375 (11th Cir. 2008).  Once a plaintiff makes a prima facie case, the burden shifts to the employer to articulate a nondiscriminatory reason for its employment action.  Springer, 509 F.3d at 1347.  If the employer meets its burden, the plaintiff must show that the proffered reason was pretext for discrimination.  Id.  A plaintiff may show pretext by identifying "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions," in the proffered reasons so that "a reasonable factfinder could find them unworthy of credence."  Id. at 1348-49 (quotations omitted).  A plaintiff must also show, as part of pretext, that discrimination was the real reason.  Id. at 1349.

In the failure-to-promote context, evidence of a disparity in qualifications between the plaintiff and the candidate selected may establish pretext, regardless of whether a court looks to that evidence at the prima facie stage.  Ash v. Tyson Foods, Inc., 546 U.S. 454, 457 (2006).  "A plaintiff must show that the disparities between the successful applicant's and [his] own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff."  Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1163 (11th Cir. 2006).  An employee's own testimony about his qualifications is "weak and insubstantial" evidence of comparative qualifications.  See Ford v. Gen. Motors Corp., 656 F.2d

117, 119 (5th Cir. Unit B Sept. 1981)[1]; see also Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 769 (11th Cir. 2005) (explaining that a plaintiff making a prima facie case must satisfy "an employer's objective qualifications"). Further, objective "[e]mployment tests can be an important part of a neutral selection system that safeguards against the very racial animosities Title VII was intended to prevent." Ricci v. DeStefano, 557 U.S. 557, 584 (2009).

First, as for the Human Resources ("HR") Management Trainee position, even if we assume that Brooks was at least as qualified as the selected candidate, Brooks failed to present evidence that CSX's hiring decision was pretextual. The recruiter for the position said that she did not select Brooks for an interview because Brooks was not sufficiently qualified; Brooks's supervisor had not recommended her for the position; and the successful candidate was the most qualified applicant. Brooks offered nothing to indicate that these qualifications-based reasons were not the real reasons for CSX's decision, or that race-based animus was. The sole "evidence" Brooks relies on is that the person who received the job was white. This fact alone, while relevant at the prima facie stage, is insufficient to show a genuine issue of fact as to pretext, because it does not establish falsity or that the true reason for the promotion was an impermissible one. Similarly, as for the Logistics Coordinator position, she also failed to present

---

[1]    Decisions issued by a Unit B panel of the former Fifth Circuit constitute binding precedent. See Stein v. Reynolds Secs., Inc., 667 F.2d 33, 34 (11th Cir. 1982).

7

evidence of pretext.  The only evidence she identified was that the hiring manager and the selected candidate were white.  This evidence, again, is unavailing in the summary judgment context.

As for both Staffing Specialist positions, Brooks did not establish a prima facie case of discrimination because she conceded that the denial of those positions was based solely on her age, which is not a protected characteristic under § 1981. See 42 U.S.C. § 1981(a).  As for the Environmental Contracts Supervisor position, Brooks did not establish a prima facie case of discrimination because she failed to show that she was qualified for the position.  CSX sought applicants who had experience with several computer programs, including "RAR" and Oracle.  In her phone interview, Brooks admitted that she had only limited experience with Oracle, and in her deposition, she testified that she did not have experience with RAR.  Further, Brooks's interview evaluation form showed that she received an overall rating of "almost meets requirements."   By contrast, the selected candidate received an overall rating of "meets expectations," and was responsible for generating reports using Oracle in her former job.

Finally, the record demonstrates that Brooks was not equally or more qualified than the individual selected for the final promotion at issue, manager of the Personnel Attendance Central Services ("PACS") computer system.   The qualifications for the position provided that the selected candidate must have,

8

among other things, "functional/technical" competencies, including extensive knowledge of the PACS system. Brooks was only able to perform one out of the five PACS functions tested in one of her interview questions, and she only met the requirements with respect to one out of the remaining six questions. On the other hand, the selected candidate performed all of the system tasks and met or exceeded the requirements with respect to the remaining questions as well. Although Brooks argues that her supervisor intentionally manipulated the PACS Management interview because he added the PACS task-performance question, she again failed to produce any evidence tying his inclusion of that question to race-based animus.

Nor can we conclude that Brooks established a prima facie case of discrimination under the ADEA, Title VII, or § 1981 based on her termination. Where a plaintiff alleges discriminatory discipline or termination, we have framed the prima facie showing to require that (1) the plaintiff is a member of a protected class, (2) she was subjected to an adverse employment action, (3) the employer treated similarly situated employees outside the class more favorably, and (4) she was qualified to do her job. Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999). In deciding whether employees are similarly situated, we must consider whether the employees are "involved in or accused of the same or similar conduct and are disciplined in different ways." Id. To prevent courts from second guessing employers' reasonable employment decisions, we require that the quantity and

9

quality of the comparator's misconduct be "nearly identical" to the plaintiff's. Id. Further, differences in treatment by different supervisors or decision-makers can seldom be the basis for a viable claim of discrimination. Silvera v. Orange Cnty. Sch. Bd., 244 F.3d 1253, 1261 n.5 (11th Cir. 2001). "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where an employer has offered extensive evidence of legitimate, non-discriminatory reasons for its actions." Young v. Gen. Foods Corp., 840 F.2d 825, 830 (11th Cir. 1988) (quotations and alterations omitted).

As an initial matter, Brooks's counseled brief cites exclusively to Title VII concerning her disparate termination claim, and contains a single passing reference to one supervisor's age. Thus, she has abandoned any age-based discriminatory termination claim under the ADEA. See Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (holding that a passing reference to an issue in a party's appellate brief is insufficient to preserve that issue for appellate review). Likewise, she never cites § 1981 in her termination discussion asserting race discrimination, so she has failed to "plainly and prominently" indicate that she is seeking appellate relief under § 1981 in addition to Title VII. See United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) ("[A] party seeking to raise a claim or issue on appeal must plainly and prominently so indicate.").

10

As for her claim under Title VII, Brooks has failed to establish a prima facie case of race discrimination based on her termination because she relied on insufficient comparator evidence and presented no other probative evidence of disparate treatment.   Notably, the evidence in the record revealed that before Brooks was fired, CSX learned that she had been operating a travel business during company time and using company resources, and had falsified payroll records by paying herself for eight hours of work on days when she did not perform that amount.   Brooks testified that she knew of several employees who violated various company policies, and she presented the affidavit of a coworker who asserted the same.   Nevertheless, the evidence showed that CSX only knew about one of those employees' alleged misconduct, and as a result, none of the other employees constituted valid comparators.   Further, although CSX reprimanded the remaining employee for using company resources for personal business, that employee's misconduct was not "nearly identical" to Brooks's because she did not conduct her business during working hours or falsify her payroll records.   They also had different supervisors.   Thus, the employee was an insufficient comparator to establish an inference of disparate treatment.    And Brooks's assertion that her misconduct-related suspension had no basis in CSX's policies is meritless: CSX's Acceptable Use policy expressly says that a violation could result in termination.

11

Finally, we reject the claim that she demonstrated pretext with respect to her retaliation claims under ADEA, Title VII, and § 1981.  If a plaintiff establishes a prima facie case of retaliation under the McDonnell Douglas  framework, then the employer has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action as an affirmative defense to liability.  Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008).   The plaintiff bears the ultimate burden of proving retaliation by a preponderance of the evidence and that the reason provided by the employer is a pretext for prohibited retaliatory conduct.  Id.

Here, even if we were to assume that Brooks established a prima facie case of retaliation, CSX offered a legitimate, non-retaliatory reason for Brooks's termination: her violation of several company policies.  Further, Brooks failed to produce any evidence demonstrating that CSX's proffered reason was false or that the real reason was to retaliate against her for expressing her concerns to upper management.   As for her claim that the call transcripts CSX relied on in suspending and ultimately firing her are invalid as evidence of a legitimate, non-retaliatory reason , we disagree.  Contrary to Brooks's assertion that the transcripts are "undecipherab[le]" due to heavy redactions, only two transcripts contain redactions, and those redactions appear to cover only the callers' personal information, such as Brooks's cell phone number and a travel client's home

address.   Although Brooks contests the other additional investigative methods that revealed further violations because they were new, she produced no evidence that the revealed violations were not true and were used by CSX as a pretext to fire her.

**AFFIRMED.**